IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America | : | |
| | : | Case No. 1:09-CR-095 |
| | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING |
| David Baker | : | DEFENDANT'S MOTION TO |
| | : | SUPPRESS |
| Defendant | : | |

This matter comes before the Court on Defendant David Baker's Motion to Suppress Evidence and Arrest and Supplemental Motion to Suppress Evidence of Arrest. (Docs. 33, 41.) The Court held a hearing on Defendant's motion on March 25, 2010. At the conclusion of the hearing, Defendant requested permission to submit a post-hearing brief. The Court granted Defendant's request. The Government filed its post-hearing brief on April 28, 2010. (Doc. 48.) Defendant filed his post-hearing brief on June 1, 2010. (Doc. 50.) For the reasons that follow, the Court **DENIES** Defendant's motion.

I.      FACTUAL BACKGROUND

Baker is charged under 18 U.S.C. §§ 922(g)(1), 924(a)(2) with one count of possession of a weapon while previously having been convicted of a felony. Baker's arrest stems from an incident that occurred on March 21, 2009. On that afternoon, Cincinnati Police Officers Brian Bolte and Jason Bolte[1] were patrolling the downtown area of Cincinnati in a marked police

---

[1] Officers Brian and Jason Bolte are brothers.

cruiser. (Suppression. Hr'g Tr. at 9.) The officers were alerted via radio that two individuals suspected in recent robberies in the area of Over the Rhine were spotted walking south on Vine near the intersection of Central Parkway and Vine. (*Id*. at 10-11, 64-65.) The radio transmission described the individuals as black males wearing black jackets, one with a white hooded sweatshirt. (*Id*. at 22, 35, 64-65.) The transmission also indicated that the individuals were possibly armed with guns. (*Id*. at 21-22.)

Officers Brian and Jason Bolte responded to the scene. Upon approaching the intersection of Central Parkway and Vine, Officer Brian Bolte saw two people, later determined to be Defendant and another man, Donald Howell, walking southbound on Vine approaching the southwest corner of Vine and Central Parkway. (*Id*. at 12.) Defendant and Howell matched the description given in the radio transmission and were the only two people walking in the area at that time.[2] (*Id*. at 12, 46, 65.) The officers pulled up to the sidewalk on Vine just past the southwest corner. (*Id*. at 12.) Officer Brian Bolte began to get out of the patrol car and attempted to stop the individuals. However, before Officer Brian Bolte was able to speak to the suspects, Defendant Baker fled on foot. (*Id*.) According to Officer Brian Bolte, Baker started to run as soon as Bolte stepped out of the car. (*Id*. at 13.) Officer Brian Bolte ordered Baker to stop and threatened to tase him, but Baker continued running. (*Id*. at 27-28.)

Officer Jason Bolte stayed near the car with Howell while Officer Brian Bolte pursued Baker southwest through a parking lot toward an alley. (*Id*.) Officer Brian Bolte tripped as he approached the alley, but regained his footing in time to follow Baker north along the alley, and then west on Central Parkway. (*Id*. at 13.) As he rounded the corner onto Central Parkway,

---

[2] Because it was a Saturday, there was not a lot of foot traffic. (*Id*. at 46.)

Officer Bolte observed Baker pull a firearm out of his waistband.[3] (*Id*. at 16.) After seeing Baker's weapon, Officer Bolte also drew his firearm. (*Id*. at 30.) However, he never raised it and put it away shortly after Baker tossed his weapon. (*Id*.) Baker took about ten to fifteen more steps with the firearm still in his hand, and then he tossed the firearm toward a building next to the sidewalk. (*Id*. at 17.) The gun bounced through an opening and into a gated parking garage located on the lower levels of the building. (*Id.*) After tossing the gun, Baker ran about twenty more feet and fell. (*Id.*)

During the chase, two other Cincinnati Police Officers, Terry Hill and Marc Schildmeyer, arrived on the scene. (*Id.*) When Baker fell, the three officers apprehended him and placed him under arrest for obstruction of official business. (*Id.* at 17, 56.) Officer Schildmeyer testified that even though he had seen Baker toss what he believed to be a gun, he still operated under the assumption that Baker was armed when apprehending him. (*Id*. at 54.) After handcuffing Baker, Officer Schildmeyer searched Baker and found approximately 2.23 grams of heroin on his person. (*Id.* at 42) Officer Schildmeyer then advised Baker of his rights and proceeded to question him about the discarded weapon. (*Id.*) When Officer Schildmeyer asked about the gun, Defendant stated first that he had found it. (*Id.* at 44.) Shortly thereafter, Baker altered his statement to say that it was the police officers who found the gun. (*Id.*)

Meanwhile, as soon as the officers had secured Baker, Officer Brian Bolte had returned to the area where he had seen Baker discard his firearm. (*Id*. at 17-18.) Another police officer, Officer Galligan, was able to gain access to the building that was located in that area with the

---

[3] Cincinnati Police Officer Terry Hill, who was driving alongside Baker at that time, also saw Baker remove the gun from his waistband and toss it to the side. (*Id*. at 70-71.)

assistance of a building security guard. (*Id*. at 17-18, 41.) Officer Galligan recovered the firearm from the locked parking garage on the lower level of the building. (*Id*. at 18, 41.)

## II. ANALYSIS

Defendant Baker moves the Court to suppress all evidence and statements obtained on March 21, 2009 on the basis that the evidence and statements were obtained as the result of an illegal *Terry* stop. Baker also argues that Officer Galligan's entrance into the parking garage to retrieve the discarded weapon amounted to an unlawful warrantless search and that the search of Baker's person was unlawful as he had committed no crime prior to the search. The Government argues that no seizure took place in this case until after Baker fled, discarded his weapon, and was ultimately apprehended. The Government also argues that Baker abandoned his weapon and therefore lacks legal standing to move for suppression of the weapon.

### A. No Seizure Occurred Prior to Defendant Abandoning His Weapon

Though unclear from Baker's briefs, he appears to contend that Officer Brian Bolte acted unlawfully by merely attempting to speak to him when Officers Jason and Brian Bolte first pulled next to Baker and Howell on Vine Street. However, the Fourth Amendment does not prohibit "all contact between the police and its citizenry." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Rather, the purpose of the Fourth Amendment is "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976). Accordingly, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Mendenhall*, 446 U.S. at

554.  It is only when a person is "seized" – when, "by means of physical force or a show of authority, his freedom of movement is restrained" – that there arises a foundation for invoking constitutional safeguards.  *Id*. at 553.  With that principle in mind, the Supreme Court has noted that "characterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices."  *Id*. at 554.

The question, therefore, in this case is when precisely was Baker "seized" for the purposes of the Fourth Amendment.  Citing the standard developed by the Supreme Court in *Mendenhall*, 446 U.S. at 554, that a person is seized "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," Baker alleges that a seizure took place at least as of the point that Officer Brian Bolte drew his weapon while chasing him.  The Government, on the other hand, claims that no seizure took place until Baker was ultimately apprehended because prior to that point, Baker made no submission to authority as is required for the occurrence of a seizure.

The Government relies primarily on *United States v. Martin*, 399 F.3d 750 (6th Cir. 2005), a case that is factually similar to the instant case.  In *Martin*, two officers were patrolling a public housing property.  Because the property was considered a high crime area, the police department had agreed to dedicate two officers to patrol the area on a full-time basis.  The officers were authorized to issue "Notice of Trespass" or "disbarment" letters informing non-residents that they were barred from the property for a one-year period.  The defendant had already received such a letter.  *Id.* at 751-52.

5

While patrolling in the area, the officers spotted the defendant and pulled over with the intention of arresting him for trespassing. However, rather than submitting to the officers' commands to stop, the defendant ran. One officer chased the defendant and saw the defendant toss a revolver during the chase. The defendant was ultimately apprehended. The officers retrieved the revolver and the pursuing officer identified it as the revolver the defendant had tossed. The defendant moved to suppress the weapon and the district court denied the defendant's motion on the basis that the defendant had abandoned the weapon. The Sixth Circuit agreed. *Id.* at 752.

In affirming the district court's holding, the Sixth Circuit found that the case was controlled by the Supreme Court's holding in *California v. Hodari D.*, 499 U.S. 621 (1991), and the court reiterated the following standard from *Hodari D.*:

> In *Hodari D.*, the Supreme Court established the rule that when a suspect refuses to submit to a show of authority by the police, the suspect is not seized by the police until such time as he or she submits or is forced to submit to police authority. As such, because a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority, the fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure. This rule applies, the Court stated, even when the show of authority is an unlawful one.

*Id.* at 752 (internal citations omitted).

The defendant in *Martin* attempted to distinguish the *Hodari D.* case by arguing that abandonment cannot result from unlawful police conduct. Specifically, the defendant pointed to the district court's finding that the sidewalks on which he was walking were not actually part of the housing authorities property and therefore he was not actually trespassing. The Sixth Circuit recognized that lower courts had carved out an exception to the rule announced in *Hodari D.*, but found that those cases merely supported the general rule that *post-seizure* abandonment cannot

6

result from police misconduct.  *See id.* at 753 (citing *United States v. Flynn*, 309 F.3d 736, 738 (10th Cir. 2002); *United States v. McDonald*, 100 F.3d 1320, 1327-29 (7th Cir. 1996); *United States v. Ward*, 961 F.2d 1526, 1535 (10th Cir. 1992); *United States v. Lewis*, 921 F.2d 1294, 1302-03 (D.C. Cir. 1990); *United States v. Koessel*, 706 F.2d 271, 274 (8th Cir. 1983)).  The Sixth Circuit expressly declined to carve out any new exception to *Hodari D.* involving pre-seizure abandonments caused by police misconduct:

> [The] ruling in *Hodari D.* holds true even if the attempted seizure or show of authority constitutes police misconduct.  If we were to hold as defendant requests and recognize an exception to *Hodari D.* for pre-seizure abandonments caused by police misconduct, this exception would create a dichotomy in our jurisprudence based on a factor the Supreme Court indicated was irrelevant.

*Martin*, 399 F.3d at 753 (internal citations omitted).  Accordingly, the Sixth Circuit found that because the defendant in *Martin* did not submit to police authority prior to the point when he fled and tossed his weapon, his weapon was abandoned and could properly be admitted into evidence even if the abandonment was caused by police misconduct.  *Id*.

*Martin* is indistinguishable from the instant case.  A show of authority alone does not result in a seizure.  Therefore, despite the fact that Officer Brian Bolte chased after Baker, ordered him to stop, and at one point briefly drew his weapon, no seizure occurred until after Baker tossed his weapon because until Baker's ultimate apprehension, Baker never submitted to Officer Bolte's or any other officer's authority.  The undisputed testimony of Officer Brian Bolte at the suppression hearing revealed that Baker began running before Officer Brian Bolte had a chance to even approach him or say anything to him.  Baker continued running until he fell and was apprehended.  Therefore, like in *Martin*, Baker's weapon was not recovered as the result of any unconstitutional seizure.

### B.     Abandonment

The "warrantless search and seizure of abandoned property does not violate the Fourth Amendment." *United States v. Caldwell*, No. 99-6031, 2000 WL 1888682, at *7 (6th Cir. Dec. 19, 2000) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)).  Baker's act of discarding his weapon while running down a public street amounts to abandonment.  *See id.* (officers were objectively justified to construe the defendant's continued flight after dropping a bag as an abandonment of his privacy interest in the bag); *United States v. Green*, 157 F. App'x 853, 857 (6th Cir. 2005) (stating that drugs dropped in flight from police pursuit that were readily available for others to recover were an abandonment for Fourth Amendment purposes); *United States v. Collis*, 766 F.2d 219, 222 (1985) (finding that a defendant who threw his bag over a fence while running from a DEA agent abandoned the bag and therefore lacked standing to challenge the warrantless search of the bag).  Finally, the fact that the gun ultimately landed in a gated garage does not alter this Court's analysis as Baker suggests it should.  While the parking garage where Baker's gun landed was not exactly a public place, Baker had no privacy interest in the garage.  Nor is there any evidence that Baker knew the garage was gated or that he actually intended to throw the weapon into the garage as opposed to just intending to toss the weapon anywhere so that he did not have it on his person.  This case is therefore distinguishable from cases wherein an individual attempts to protect property from search and seizure by throwing it into an area in which he has an expectation of privacy.  *See United States v. Dillard*, 78 F. App'x 505, 510-11 (6th Cir. 2003) (finding that a defendant who threw a briefcase to the ground near the side door of a house he had been visiting, was not attempting to secrete the container in a place where he had an expectation of privacy, but rather discarded the item in his

8

attempt to avoid arrest); *United States v. Morgan*, 936 F.2d 1561, 1570 (10th Cir. 1991) (finding that a defendant who dropped his bag on the back porch of an acquaintance's house while fleeing from the police abandoned the bag, and distinguishing the defendant's act from cases "where the item was left to the care or responsibility of another, or where there is a delayed indication of an intent to retain an expectation of privacy in the item"). Baker's act of tossing his weapon and continuing to flee amounted to abandonment. Accordingly, he lacks standing to challenge the seizure of the weapon.

### C. Search of the Parking Garage

Baker next argues that Officer Galligan's entrance into the parking garage to retrieve the discarded weapon amounted to an unlawful warrantless search. Baker lacks standing to challenge any search of the parking garage as he has no expectation of privacy in the garage. *See United States v. Dycus*, 151 F. App'x 457, 459 (6th Cir. 2005) ("[A] defendant may only seek to suppress evidence under the exclusionary rule where that defendant's legitimate privacy interest under the Fourth Amendment has been violated, or, as the parties have described it, the defendant has standing."); *United States v. Gillis*, 358 F.3d 386, 391 (6th Cir. 2004) (noting that if a defendant has no expectation of privacy in the premises, then he lacks standing to challenge the constitutionality of the search).

### D. Search of Baker's Person

Baker finally argues that the search of his person was unlawful as he had committed no crime prior to the search. The testimony given at the suppression hearing revealed that prior to searching Baker, Officer Schildmeyer placed Baker under arrest for obstruction of official business. There is no evidence that Baker's arrest was unlawful. Therefore, the search of

Baker's person was a lawful search incident to an arrest. *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). In any case, Defendant does not face a drug charge in this matter. Accordingly, the admissibility of the heroin found on Baker's person may be a moot point.

### III. CONCLUSION

For the reasons stated above, Defendant Baker's Motion to Suppress Evidence and Arrest (doc. 33) and Supplemental Motion to Suppress Evidence of Arrest (doc. 41) are **DENIED**.

IT IS SO ORDERED.

                                                ___s/Susan J. Dlott_____
                                                Chief Judge Susan J. Dlott
                                                United States District Court